**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHERI M. WELCH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-1017 |
| | ) | |
| v. | ) | Judge Fischer |
| | ) | Magistrate Judge Bissoon |
| TRI RIVERS CONSULTING | ) | |
| SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment

(Doc. 37) be granted regarding Plaintiff's claims of disability discrimination under the ADA

and the PHRA, but otherwise denied.

### II. REPORT

#### BACKGROUND

Plaintiff has brought suit against her former employer and related entities ("Defendants"),

alleging violations of the FMLA, the ADA and the PHRA, as well as retaliation under each of

those statutes. *See* Am. Compl. (Doc. 24) at Counts I & II (FMLA interference and retaliation);

Counts III & IV (discrimination and retaliation under ADA); *and* Counts V & VI (disability

discrimination and retaliation under PHRA). The facts giving rise to Plaintiff's claims are as

follows.

Plaintiff worked for Defendants as a medical/legal coordinator from December 2001 until her termination on September 30, 2008. Defs.' Statements of Fact (Doc. 39) at ¶ 3.[1] Although Defendants claim that problems surfaced sooner, in June of 2008, Plaintiff began receiving reprimands from her supervisor, Luann Dugan ("Ms. Dugan"), regarding tardiness, absenteeism and a negative attitude. *See id.* at ¶¶ 30-39, 43, 194. These incidents coincided with Plaintiff's reports that her medical conditions, namely anxiety, headaches and difficulty sleeping, had worsened. *See, e.g.*, notes of L. Dugan dated June 26, 2008 (filed under Doc. 50-7 at pg. 17 of 22) ("[Plaintiff] advised me that she was not happy here and was taking medication to help her get through the day and that she was having anxiety attacks at work"); Pl.'s email to L. Dugan dated June 26, 2008 (Doc. 50-7 at pg. 21 of 22) ("The person I have become here is not me. . . . It is concerning to me that I have to pop a pill each day just to make it through. . . . I am just trying my damnest [sic] to not let things bother me so that I don't end up in the nut ward."); notes of L. Dugan dated Aug. 26, 2008 (Doc. 50-7 at pg. 12 of 22) (Plaintiff "still was having problems with . . . sleeping and an almost constant headache").

In July of 2008, Plaintiff requested six weeks of leave under the FMLA, and Defendants granted it. Plaintiff's medical leave ran from July 15, 2008 until August 26, 2008. On the day of Plaintiff's return, Ms. Dugan advised her "that [Plaintiff's] bad attitude and negativity needed to stop." Doc. 50-7 at pg. 12 of 22.

In the month between returning to work on August 26th and her termination on September 30th, Plaintiff frequently was late to work. Although she often "clocked in" only a few minutes after her scheduled start time, she was significantly late on multiple occasions. *See* Defs.' Facts at ¶¶ 209, 213, 227, 233-35 (Plaintiff late by several minutes or hours).

---

[1] To the extent that the statements of fact cited herein are disputed, none of those disputes are material for the purposes of the Court's analyses.

On three of the days Plaintiff was late, she went to her treating physician, whose office was located in the same building as Plaintiff's workplace, to retrieve written medical excuses. *See id.* at ¶¶ 204, 209.

During this time, Plaintiff received at least three reprimands for tardiness and/or other workplace violations. *See* notes of L. Dugan dated Sept. 12, 2008 (filed under Doc. 50-7 at pg. 7 of 22) (addressing Plaintiff's "negative comments" towards co-worker, insubordination, and raising her voice to Ms. Dugan); written "final warning" to Plaintiff dated Sept. 17, 2008 (filed under Doc. 50-6 at pgs. 48-49 of 50); notes of L. Dugan dated Sept. 26, 2008 (filed under Doc. 50-6 at pg. 47 of 50) (noting that Plaintiff was reprimanded for tardiness). In her "final warning" on September 17, 2008, Ms. Dugan circled, on a pre-established list of potential violations, "attendance," "lateness," "insubordination," "poor attitude," "violation of policy" and "violation of parking policy." *See* Doc. 50-6 at pg. 48 of 50 (capitalization of words in original omitted). Each of these alleged violations were referenced, at one time or another, in Ms. Dugan's notes and/or Plaintiff's personnel file. *See generally* documents filed under Docs. 50-6 and 50-7.

On September 26th, a day on which Plaintiff already had been reprimanded for tardiness (*see* Doc. 50-6 at pg. 47 of 50), Ms. Dugan and human resources manager Susan Vukson ("Ms. Vukson") informed Plaintiff that her employment was suspended pending an investigation of a harassment complaint made by Jeffrey Winslow ("Mr. Winslow"). *See* Pl.'s Facts (Doc. 49) at ¶ 90. Mr. Winslow, who was not an employee of Defendants, approached Ms. Vukson on September 26th and advised her of an incident that had occurred several months prior. In January or February of 2008, Plaintiff took a piece of complimentary fruit from a basket sitting near the concierge desk where Mr. Winslow worked. *See* Pl.'s Aff. (Doc. 50-1) at ¶¶ 15.

Mr. Winslow objected, explaining that the fruit was intended for his employer's patients/guests, and Plaintiff "reacted by making the comment, 'you don't have to be an asshole about it.'" *Id.* at ¶ 16; *see also* Defs.' Facts at ¶¶ 307-311.

Mr. Winslow claims to have approached Ms. Vukson on September 26, 2008, because, after the incident, Plaintiff had given him intimidating looks, and more recently made a comment in Mr. Winslow's earshot about taking more fruit. *See* Defs.' Facts at ¶¶ 325-32. Plaintiff denies this conduct, stating instead that she did her best to avoid Mr. Winslow after the initial incident. *See* Pl.'s Aff. at ¶ 17.

In any event, Plaintiff has testified that, on the day of the initial incident, she had a conversation with her co-workers that Ms. Dugan joined. *See* Pl.'s Facts at ¶ 88 (citing record evidence). According to Plaintiff, Ms. Dugan commented that Mr. Winslow was "not the nicest person," and Ms. Dugan did not take any disciplinary action against Plaintiff or accuse her of violating workplace policy. *Id.* In response, Defendants dispute that Ms. Dugan participated in the discussion, and Defense counsel state that Defendants "will offer additional sworn testimony" demonstrating that Ms. Dugan "was not present" during the conversation. Defs.' Resp. (Doc. 54) to Pl.'s Facts at ¶ 88.

On September 30, 2008, Defendants concluded their investigation of the harassment incident, finding Mr. Winslow's complaint "both substantive and credible." *See* ltr. of termination dated Sept. 30, 2008 (filed under Doc. 50-3 at pg. 47 of 49). Defendants' termination letter stated that "[t]hese findings, in combination with the multiple policy violations for which a final warning had already been issued," warranted Plaintiff's discharge. *Id.*

Although Defendants' letter of termination makes reference to Plaintiff's other violations of workplace policy, the letter makes clear that Plaintiff's alleged harassment of Mr. Winslow was an important consideration. *See id.* Indeed, Defendants' supporting brief describes the matter as "the single factor [that] ultimately resulted in Plaintiff's termination." Defs.' Br. (Doc. 38) at 13.

**ANALYSIS**

For the purposes of summary judgment, the facts, when read in a light most favorable to Plaintiff, support two overarching conclusions: (1) shortly before and after her FMLA leave, Plaintiff's worsening medical conditions caused her difficulty in coping at work and resulted in increased workplace tension and reprimands; and (2) the parties dispute whether Defendants were aware of Plaintiff's alleged, pre-leave harassment of Mr. Winslow, and whether the alleged harassment continued after Plaintiff returned to work. To the extent that Plaintiff survives summary judgment, it is these conclusions, alone and in combination, that form the underlying bases for the recommendations herein.

Regarding FMLA interference, Plaintiff may proceed under the theory that Defendants failed to sufficiently advise her of her rights under the statute. *See* Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp.2d 490, 496 (E.D. Pa. Aug. 4, 2010) (citing and quoting Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 143-44 (3d Cir. 2004)). Although Plaintiff was demonstrably aware of her FMLA rights regarding an extended leave of absence, given that she had taken one, neither she nor Defendants appeared to appreciate or evaluate the possibility that she later may have required intermittent leave. *See generally* Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp.2d 419, 429 (W.D. Pa. 2009) (employee may be entitled to intermittent leave under FMLA, *i.e.*, "leave taken in separate periods of time" ranging "from an

hour or more to several weeks") (citations to quoted sources omitted). Reading the evidence in a

light most favorable to Plaintiff, it could have or should have been apparent to Defendants that

Plaintiff's medical conditions were impacting her ability to then meet the standards of her

employment. Indeed, in response to her "final warning" notice on September 17th, Plaintiff

specifically advised Mses. Dugan and Vukson of her belief that she "was not ready,"

health-wise, to be back at work. *See* Doc. 50-11 at pg. 17 of 27.

Defendants may argue that Plaintiff, and/or her treating physician, were in a better

position to determine whether intermittent leave was appropriate or necessary. While this may

or may not be persuasive to a jury, Defendants have failed to demonstrate their entitlement to

summary judgment on Plaintiff's FMLA interference claim.[2]

Turning to Plaintiff's retaliation claims, Plaintiff's six-week FMLA leave qualifies as

protected activity. *See, e.g.*, Erdman v. Nationwide Ins. Co., 2010 WL 235112, *3 (M.D. Pa.

Jan. 15, 2010) (holding same, citation to binding authority omitted). On her very first day back

to work, Ms. Dugan counseled Plaintiff regarding her poor attitude, and, a little over one month

---

[2] Given that Defendants previously granted Plaintiff six weeks of FMLA leave, their counsel's
arguments that Plaintiff's medical impairments were not "serious health condition(s)"
are unconvincing, at least for the purposes of summary judgment. Also, for the purposes of
summary judgment, Defendants have not sufficiently addressed Plaintiff's duty to present
evidence regarding the prejudice that resulted from their purported interference with her
FMLA rights. *Cf.* Conoshenti, 364 F.3d at 145-46 (plaintiff not required to demonstrate issue of
material fact regarding prejudice where defendant, as summary judgment movant, did not
"point[] to an absence of evidence [regarding] prejudice[]") (citations omitted). Although
Defendants' briefing references, in unrelated contexts, a purported lack of "actual harm,"
they have not meaningfully addressed whether prejudice resulted from their failure to advise
Plaintiff regarding her potential right to intermittent leave. *Compare* Defs.' Br. at 4 (discussing
"actual harm" in recitation of boilerplate legal standards) *and id.* at 5, 10 (arguing lack of harm
because Plaintiff's three incidents of medically excused tardiness were not considered as part of
termination decision, an argument begging questions of material fact) *with, e.g.*, Schaar,
732 F. Supp.2d at 496-97 (plaintiff survived summary judgment based on testimony that,
"had she been informed that FMLA was an option . . ., she would have taken her absence as
FMLA leave").

later, Plaintiff's employment was terminated.  *See* discussions *supra*.  While Defendants argue

that Plaintiff's work problems predated her FMLA leave, the circumstances surrounding

Plaintiff's termination, and the temporal proximity between her medical leave and termination,

preclude the entry of summary judgment.

Similarly, disputes of material fact remain regarding Defendants' non-retaliatory reasons

for Plaintiff's termination.  Although Defendants have identified numerous violations of

workplace policy, it was Plaintiff's purported harassment of Mr. Winslow that formed the

primary basis for her termination, both at the time the decision was made and on summary

judgment.  *See* discussion *supra*.  Plaintiff specifically has testified that, well before she took

FMLA leave, Ms. Dugan was aware of the initial incident with Mr. Winslow, and Plaintiff

denies having engaged in any inappropriate conduct toward him thereafter.  Defendants'

summary judgment papers as much as admit to the existence of disputed material facts,[3]

and Defendants are not entitled to summary judgment regarding retaliation.[4]

The only remaining matter is Plaintiff's claims of disability discrimination under the

ADA and PHRA.  In response to Defendants' Motion for Summary Judgment, Plaintiff relies

exclusively on the "regarded as" theory of discrimination.  *See* Pl.'s Opp'n Br. at 12-16.

---

[3] *See* discussion *supra* (contemplating Defendants' proffer of "additional sworn testimony" showing that Ms. Dugan did not discuss initial incident with Plaintiff).
[4] The law is less than entirely clear regarding whether the taking of FMLA leave qualifies as protected activity under the ADA and PHRA.  *See, e.g.*, Erdman, 2010 WL 235112 at *5 (noting Middle District of Pennsylvania court's "predict[ion] that the Pennsylvania Supreme Court would find that an FMLA request qualifies as a protected activity under the PHRA"); *compare* Picarazzi v. John Crane, Inc., 2011 WL 486211, *18 (S.D. Tex. Feb. 7, 2011) (request for FMLA leave is "protected activity" under ADA) *with* Smith v. Methodist Hosp. of Dallas, 2008 WL 5336342, *8 (N.D. Tex. Dec. 19, 2008) ("[t]aking FMLA leave does not of itself constitute opposition to disability discrimination" and therefore does not constitute protected activity under ADA).  The parties have not addressed these issues, however, and the Court should decline to reach them in a vacuum.

To establish "regarded as" liability, Plaintiff must show that she suffered "a nonlimiting impairment that [D]efendants mistakenly believed substantially limited a major life activity." Keyes v. Catholic Charities of Archdiocese of Phila., 2011 WL 713640, *4 (3d Cir. Mar. 2, 2011) (citation to published, binding authority omitted).[5] Plaintiff has failed to identify the major life activity in question. Her counsel appears to infer that the relevant activity is working. *See* Pl.'s Opp'n Br. (Doc. 48) at 16 (stating that Defendants "[c]learly . . . view[ed] the ability to arrive at work on time [as] an essential function of [Plaintiff's] job"). Given that Plaintiff has not identified evidence or arguments satisfying the legal standards regarding any other major life activity, the Court may restrict its analyses to working.

For the major life activity of working, Plaintiff is required to demonstrate that her employer regarded her as being unable to perform a "wide range or class of jobs." Keyes at *4 (citation to quoted source omitted); *see also id.* ("[a]n employer who simply, and erroneously, believes that a person is incapable of performing a particular job will not be liable under the ADA") (citation to quoted source omitted). Plaintiff has identified no wide range or class of jobs that Defendants regarded her as being incapable of performing. To the contrary, Plaintiff's reference to the "essential function[s] of [her] job" goes to Defendants' alleged perceptions regarding a particular position, and she cannot survive summary judgment. *See* discussions immediately *supra* (emphasis added).

---

[5] Because Plaintiff's employment was terminated before January 1, 2009, the effective date of the ADA Amendments Act of 2008, the Court applies the pre-amendment standards. Lynch v. Matthews Int'l, 2010 WL 2640597, *4 n.5 (W.D. Pa. Jun. 29, 2010) (holding same, numerous citations omitted); Britting v. Sec'y of Dept. of Veterans Affairs, 2011 WL 300240, *2 (3d Cir. Feb. 1, 2011) (ADAAA is not applied retroactively). In addition, the legal standards applicable under the ADA apply with equal force to Plaintiff's PHRA claims. Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010) (citation omitted).

Even if Plaintiff had argued that Defendants regarded her as being incapable of performing a range of jobs requiring prompt attendance, this would prove too much under the law. The undersigned's research has failed to identify any case law endorsing this theory, and its application would swallow the rule. *See generally* Willi v. American Airlines Inc., 2008 WL 2570728, *1 (5th Cir. Jun. 25, 2008) ("regular attendance is an essential function of most jobs") (citations and alterations in original omitted). Plaintiff's attendance argument also fails because her inability to maintain prompt attendance was not a misplaced perception, but a recognition of fact. *Compare* Pl.'s Opp'n Br. at 10 (Plaintiff verbally informed Defendants "that she was arriving to work late because she was sick and/or due to the medications that she was taking") *with* Hilburn v. Murata Elec. N. Amer., 181 F.3d 1220, 1230 (11th Cir. 1999) ("[w]here a defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact, . . . a finding that plaintiff was regarded as disabled . . . is inappropriate") (citations and internal quotations omitted).

For these reasons, Defendants' Motion for Summary Judgment regarding Plaintiff's claims of disability discrimination under the ADA and PHRA should be granted.[6]

## CONCLUSION

Summary judgment should be granted in favor of Defendants regarding Plaintiff's claims of disability discrimination, but it should be denied regarding Plaintiff's FMLA interference claims and retaliation claims under the FMLA, ADA and PHRA. Although Plaintiff's attendance, attitude and other workplace problems may have made her an extraordinarily

---

[6] As suggested above, Defendants' entitlement to summary judgment regarding disability does not affect the viability of Plaintiff's retaliation claims. Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 786 (3d Cir. 1998) ("[a]n individual who is adjudged not to be ['disabled'] may still pursue a retaliation claim under the ADA") (internal quotations omitted).

difficult employee, the undersigned cannot, under the applicable legal standards, recommend that Defendants are entitled to summary judgment in this case. *See* discussions *supra* (finding issues of material fact). Thus, the undersigned must recommend that Defendants' Motion for Summary Judgment be denied to the extent described above.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by April 7, 2011. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, -- F.3d --, 2011 WL 635274, *5 n.7 (3d Cir. Feb. 9, 2011). Responses to objections are due by April 25, 2011.


March 21, 2011                                    s\Cathy Bissoon
                                                  Cathy Bissoon
                                                  United States Magistrate Judge

cc (via ECF email notification):

All Counsel of Record